## THE WILLIAM G. HOWARD.
## THE CORNING.

District Court, S. D. New York.
Aug. 26, 1932.

John E. Morrissey, of New York City, for claimant.

Macklin, Brown, Lenahan & Speer and Richard F. Lenahan, all of New York City, for libelant.

GODDARD, District Judge.

The libelant sues to recover damages alleged to have been sustained as a result of a collision between the tugboat, the William G. Howard, and the car float No. 23 which claimant's tug Corning had in tow at the time.

On November 6, 1928, at about 7:30 a. m., the Howard, which had come into Pier 18, East River, to take on board ice for her galley and lay bow out near the end of the pier, cast off her lines and started to proceed to Red Hook Flats to pick up a tow bound for New England ports. The Howard was about 140 feet in length and 30 feet beam.

The Corning with her tow of two car floats had rounded the Battery from Hoboken and was proceeding up the East River to Pier 26. Her tow consisted of two loaded car floats on her port side; car float No. 21 being next to the tug and car float No. 23 being outside of No. 21. The Corning was 89 feet long and 25 feet beam. The car floats were each approximately 250 feet in length and 40 feet wide.

The collision occurred about 125 feet off the southerly end of Pier 18, and the starboard side aft of midships of car float No. 23 came in contact with the starboard side of the Howard's stem. There was a strong ebb tide which in this vicinity sets toward the Manhattan shore. After the collision with the Howard, the stern of car float No. 23 struck the rail of the steamer Tennessee which was lying against the end of Pier 19 with her bow headed down the river and extending within a few feet of Pier 18. The East River at this point is approximately 1,350 feet wide.

The testimony of Captain Huntley of the Howard, who has held a master's license since 1888, is that after her lines had been cast off she started ahead at slow speed, and then he, for the first time, saw the Corning and her tow about 200 feet out from the pier sagging in toward the Howard; that he immediately rang for full speed astern and blew an alarm which was answered by an alarm from the Corning; that the stern of the Howard was about 20 or 25 feet inside the slip when the float came in contact with the Howard. He did not look down the river to see if vessels were approaching until just after he had ordered the Howard's lines cast off and rang for slow speed ahead. He apparently did not anticipate that any vessel would be proceeding up the river so close to the Manhattan shore. Although his honesty made a favorable impression, whether the Howard would have escaped the collision if she had remained fast at the pier or would have been caught by the sagging of the car float as the Tennessee was on the end of Pier 19, is problematical, but he was clearly at fault in failing to observe approaching vessels and conditions and to act accordingly before attempting to proceed from the pier.

The next question is, Was the negligence on part of the Corning sufficiently serious to justify holding her for a share of the damages which resulted from the collision. The testimony of the Corning is that, as she was proceeding up the river on the Brooklyn side and off the slip between Piers 15 and 16, the tug Auburn with a tandem tow of eight barges, two abreast in four tiers, was observed bound down in midstream just above a dredge that was working in the river at a point about 600 feet off the Brooklyn shore and about 500 feet below the Brooklyn Bridge. This tow, so the Corning witnesses say, was about 600 feet long, and her tail end was swinging toward the Manhattan shore with the set of the strong ebb tide; the Auburn blew a two-whistle signal to the Corning and hauled to port and again sounded a two-whistle signal followed by an alarm; that the Corning answered with two blasts of her whistle; that the Auburn hauled for the Brooklyn shore, causing her tow to swing more toward the Manhattan shore. The Corning hauled for the Manhattan shore and off Pier 17 straightened out and proceeded under one bell waiting for the tug Arbuckle, which was following the Auburn, with two barges in tow, to pass. During this time car float No. 23 passed about 100 or 150 feet away from some barges which were on the end of Pier 17, and that when car float No. 23 was abreast of Pier 18, the Howard let go her lines and started away from the pier and when she saw car float No. 23 she backed and swung down stream and then started ahead again in an effort to avoid the barges on the end of Pier 17; then, seeing that she could not escape the car float, reversed her engines, but too late to avoid coming in contact with the No. 23, and that this contact caused the No. 23 to swing in toward the Tennessee and rub along her rail, although the Corning had swung away from the Manhattan shore. However, after hearing the testimony of Captain Huntley of the Howard, I am convinced that, after he observed the Corning and her tow, he immediately ordered his engines astern and that the only movements of his engines were ahead for a very short time followed by backing into the slip again. I am also of the opinion that it was not the contact between the Howard and car float No. 23 which caused the car float to hit the Tennessee, for the collision between the Howard and the No. 23 occurred less than 150 feet out from the pier so that the Howard could not have acquired much headway, and moreover the credible testimony is that she was backing at that time, for the Howard to have pushed the two loaded large car floats and the Corning, made fast close to each other, with sufficient force or in such a manner as to cause the tail of the No. 23 to rub along the rail of the Tennessee, is improbable. It is much more probable, it seems to me, that the contact between the No. 23 and the Tennessee is but further evi-

dence of the inability of the Corning to keep her tow under control made up as it was with two railroad floats on one side. A tow made up in that manner tended to set her toward the Manhattan shore, and this tendency was much increased by the strong ebb tide.

The weight of testimony is that the Corning was not proceeding up on the Brooklyn side of the river as her captain said, but was near the Manhattan shore. That she was near the Manhattan shore is supported by the probabilities, for the Auburn and the Arbuckle were proceeding down on that side of the river, and it is unlikely that, if the Corning had been nearer to the Brooklyn shore than the Auburn, she would have blown the whistles to the Corning (which she did) for passing starboard to starboard with the Corning, as that would have meant that the Corning would have had to pass across the bow of the Auburn to the Manhattan side.

It is clear from the weight of credible testimony that the Corning was violating the East River statute (Laws N. Y. 1848, c. 321), and in the case at bar we do not have a situation like that referred to in The Penoles (C. C. A.) 3 F.(2d) 761, where the position of a vessel which had violated the East River statute was merely a "condition" and not a "cause" of collision, for it was not only the presence of the Corning, but her inability to control the No. 23 so that it sagged in toward the Howard, thus directly contributing to the happening of the collision.

Therefore it appears that the collision was due to the serious faults of both the Howard and the Corning, and the damages should be borne equally between them. Decree may be entered with the usual reference as to amount of damages, unless agreed upon.